## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                                 **Case No. 8:09-CV-2290-T-33EAJ**

**GHASSAN MOHAMMED ZEBDAOUI,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Before the court in this denaturalization proceeding are Plaintiff's **Motion for Summary Judgment** (Dkt. 10), Defendant's **Response** (Dkt. 12), and Plaintiff's **Supplemental Brief** (Dkt. 25).[1] The court has reviewed the evidence filed in connection with the motion and response as well as supplemental evidence filed by Plaintiff in camera.[2]

## Standard of Review

A claimant or defendant is entitled to summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering these materials, courts generally must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion." Scott

---

[1] The motion has been referred to the undersigned for a Report and Recommendation (Dkt. 16). See 28 U.S.C. § 636(b); Local Rules 6.01(b) and (c), M.D. Fla.

[2] Some of Plaintiff's evidence was redacted because it contained personal identifiers. Defendant maintains that the redacted information is material to Plaintiff's motion. On July 19, 2010, the court directed Plaintiff to file unredacted copies of its evidence in camera and to serve unredacted copies on Defendant (Dkt. 52). These copies have been reviewed.

v. Harris, 550 U.S. 372, 378 (2007) (citation and internal quotation marks omitted) (alteration in original).  However, facts need not be viewed in the light most favorable to the nonmoving party where a dispute over those facts is not "genuine."  Id. at 380.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Id.

**Statement of Facts**

**I.    Contested Evidence**

In 1979, an individual identifying himself as Mohammad Zabdawi, born in Haifa, Israel, in 1927 but living in Beirut, Lebanon at the time, completed a financial affidavit in which he stated that his 18-year-old son Ghassan Zabdawi ("Zabdawi") and 19-year-old son Marwan Zabdawi were dependent on him for support (Dkt. 10 Ex. 22).  Mohammad Zabdawi pledged to bear responsibility for the support of Zabdawi while the latter held student visa status in the United States.  In August 1979, Zabdawi presented his passport ("the 1979 Passport") and entered the United States on an F-1 student visa  (Dkt. 10 Ex. 2).

A May 4, 1981 criminal complaint filed in Michigan alleged that on April 24, 1981, Zabdawi: 1) committed assault and battery; 2) entered a building without permission; and 3) interfered with another person's telephone service with the intent to frighten, intimidate, threaten, harass, molest, or annoy (Dkt. 10 Ex. 3).  On the same day, Zabdawi's fingerprints ("the 1981 Fingerprints") were taken by the Michigan State University Police Department (Dkt. 10 Ex. 4).  The

fingerprint card lists Zabdawi's 1961 birth date ("the 1961 Birth Date").[3]  Zabdawi pled guilty to interfering with another person's telephone service with the intent to frighten, intimidate, threaten, harass, molest, or annoy and was sentenced to thirty days in jail (Dkt. 10 Ex. 5).

In June 1981, the United States Department of Justice Immigration and Naturalization Service ("INS") directed Zabdawi to show cause why he should not be deported from the United States  (Dkt. 10 Ex. 8).  The INS alleged that Zabdawi failed to comply with the conditions of his student visa because his thirty-day incarceration precluded him from attending Michigan State University as a full time student.  On June 25, 1981, an Immigration Judge ordered Zabdawi's deportation to Lebanon (Dkt. 10 Ex. 9).  Zabdawi was deported five days later (Dkt. 10 Ex. 10).

While attending medical school in Lebanon from 1981 to 1983, Nuhad Afif Kulaylat ("Kulaylat") became acquainted with a classmate named Ghassan Zabdawi (Dkt. 25 Ex. 1).  The classmate told Kulaylat that he had enrolled in an engineering program in the United States but had returned to Lebanon in 1981 for summer vacation and decided to stay.  In 1983, the classmate advised Kulaylat that he would return to the United States to resume his engineering studies.

In September 1983, an individual using the name Nouhad Afif Koleilat obtained a Lebanese identification card ("the 1983 Identification Card") (Dkt. 10 Ex. 11).[4]  The 1983 Identification Card indicates that the individual was born in Lebanon in 1963.

In August 1986, a Texas state court judge approved a request by Nouhad Afif Koleilat to

---

[3] The fingerprint card includes the month and day of the 1961 Birth Date.  To preserve the confidentiality of the personal identification information, the month and day are not specified in this order.

[4] The 1983 Identification Card is not in English, however, the exhibit includes a translation into English that bears Defendant's signature and is dated May 1, 1989.  Defendant does not contest that he completed this translation.

3

change his name to Ghassan Mohammed Zebdaoui (Dkt. 10 Ex. 13).

II.     **Uncontested Evidence**

In August 1985, Defendant, using the name Nouhad Afif Koleilat, applied for status as a permanent resident of the United States (Dkt. 10 Ex. 12; Answer at ¶ 12).  Defendant swore that he was born in Lebanon in 1963; entered the United States in December 1983[5]; had never been arrested, convicted, confined in a prison, or deported; and intended to seek employment as a civil engineer (Dkt. 10 Ex. 12; Answer at ¶¶ 13-14).  One year later, Defendant legally changed his name to Ghassan Mohammed Zebdaoui (Answer at ¶ 17).

In February 1988, Defendant applied for a new alien registration receipt card (Dkt. 10 Ex. 18).  Defendant indicated that his birth date needed to be corrected and listed the 1961 Birth Date as his birth date.  Later that month, the Department of Justice Bureau of Identification took Defendant's fingerprints ("the 1988 Fingerprints") (Dkt. 10 Ex. 14).  The fingerprint card indicates that Defendant was born on the 1961 Birth Date.

In 1990, Defendant filed a petition for naturalization (Dkt. 10 Ex. 15).  Defendant reaffirmed that he was born on the 1961 Birth Date and reported that he had previously used the name Nouhad Afif Koleilat and that his continuous residency in the United States began on December 30, 1983. He denied having ever been deported, arrested, convicted, or imprisoned for breaking or violating any law or ordinance.

In August 1991, Defendant swore under oath before a naturalization examiner that the representations in his petition were true.  Defendant became a naturalized U.S. citizen the following

_____

[5] The application initially listed Defendant's entry date as December 29, 1985.  This was clearly a typographical error as the application was submitted in August 1985, several months earlier.  A handwritten notation on the application changed the "5" in 1985 to a "3" (Dkt. 10 Ex. 12).

December (Dkt. 10 Ex. 17).  His certificate of naturalization indicates that he was born on the 1961 Birth Date.  Gloria Ing ("Ing"), an Immigration Services Officer, declared under penalty of perjury that Defendant's petition would definitely have been denied had he revealed a prior deportation (Id.).

In May 1992, Defendant filed a petition to help his father, Mohamad Zebdaoui, immigrate to the United States (Dkt. 10 Ex. 23). He again reported that he was born on the 1961 Birth Date. He indicated that his father was born in Haifa, Israel in 1927 and had a son named Marwan, born in 1960.  On February 3, 1993, Mohamad Abdallah Zebdaoui, born in Haifa, Israel in 1927, applied for an immigrant visa and alien registration (Dkt. 10 Ex. 24).  His listed children included a son named Marwan, born in 1960, and a son named Ghassan, born in 1961.  In October 1999, Mohamad A. Zebdaoui, born in 1927, applied for naturalization (Dkt. 10 Ex. 25). His children included Marwan Zabdawi, born in 1960, and Ghassan Zebdaoui, born on the 1961 Birth Date.

On October 12, 2009, Defendant's fingerprints ("the 2009 Fingerprints") were taken, at his request, by the Polk County, Florida Sheriff's Office (Dkt. 10 Ex. 19-20).  The fingerprint card indicates that Defendant was born on the 1961 Birth Date.

An FBI identification record reflects that Defendant was arrested in 2004 and 2007, however, it does not list Zabdawi's 1981 arrest (Dkt. 17).[6]

## III.   **Comparative Evidence**

Michele T. Douglass ("Douglass"), a Certified Tenprint Examiner with the Federal Bureau of Investigation, compared the 1981 Fingerprints, the 1988 Fingerprints, and the 2009 Fingerprints and concluded that all three were taken from the same individual (Dkt. 10 Ex. 21).  Douglass

---

[6] The report is for Ghassan Mohammed Zebadaoui. Despite the extra "a" in the surname, there appears to be no dispute that this report is for Defendant.  Indeed, Defendant relies on this report as proof that he was not Zabdawi.

5

reported that a second Certified Friction Ridge Examiner examined the fingerprint cards and reached the same conclusion.

In January 2010, Kulaylat swore under oath that he was "certain" that the photographs in the 1979 Passport and the 1983 Identification Card both identify the classmate he knew as Ghassan Zabdawi (Dkt. 25 Ex. 1).  Kulaylat stated that he did not enter the United States in 1983 as Koleilat and expressed "no doubt" that his name and identity were used by Zabdawi to do so (Dkt. 25 Ex. 1).

## **Analysis**

United States attorneys have a duty, "upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation."  8 U.S.C. § 1451(a) (1994).  The government carries a heavy burden of proof in denaturalization proceedings.  Fedorenko v. United States, 449 U.S. 490, 505 (1981) (citation and internal quotation marks omitted).  "The evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt."  Id. (citation and internal quotation marks omitted).

"[A] naturalized citizen's failure to comply with the statutory prerequisites for naturalization renders his certificate of citizenship revocable as 'illegally procured' under 8 U.S.C. § 1451(a)."  Id. at 514.  At the time Defendant was naturalized in 1991, one such statutory prerequisite was that the person have been "lawfully admitted to the United States for permanent residence."  8 U.S.C.

6

§§ 1427(a) & 1429 (1991).[7] To satisfy this prerequisite, Defendant must have obtained "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Id. at § 1101(a)(20) (1991). This status was available only to aliens "admissible to the United States for permanent residence." Id. at § 1255(a) (1991).

When Defendant re-entered the United States in 1983, an alien previously arrested and deported was excluded from admission into the Unites States for five years following such deportation. Id. at § 1182(a)(17) (1982). Exclusion also applied to "[a]ny alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by wilfully misrepresenting a material fact." Id. at § 1182(a)(19) (1982).

Defendant maintains that there is a genuine issue of material fact as to whether he was Zabdawi. Defendant contends in an unsworn submission that: 1) the evidence reflects mismatching birth dates; 2) he should be permitted to conduct further scrutiny of the fingerprint cards; 3) the photographs on the 1979 Passport and the 1983 Identification Card do not match; 4) the August 1986 order approving the name change is a forgery; 5) redacted information in the evidence would reveal discrepancies as to Social Security numbers, heights, weights, names of parents, nationalities, and schools attended; and 6) the FBI identification report establishes that he was not Zabdawi.

Defendant's contentions are blatantly contradicted by the evidence. The 1961 Birth Date listed on Zabdawi's 1981 fingerprint card is also listed on, among other things, Defendant's

---

[7] Although this prerequisite was subject to exception "as otherwise provided" in 8 U.S.C. ch. 12, subch. III (Nationality and Naturalization), 8 U.S.C. § 1429 (1990), Defendant does not contend that any such exception applied to him.

fingerprint cards, his petition for naturalization, and his certificate of naturalization. Two fingerprint experts confirmed that Zabdawi and Defendant have the same fingerprints.    The photographs on the 1979 Passport and the 1983 Identification Card appear identical.[8]

Defendant's unsupported assertion that the August 1986 order approving his name change is a forgery is refuted by the record and his own admissions.  His petition for naturalization confirms that he previously used the name Nouhad Afif Koleilat (Dkt. 10 Ex. 15).  Moreover, Defendant admits that he applied for permanent resident status as Nouhad Afif Koleilat in August 1985 and legally changed his name to Ghassan Mohammed Zebdaoui in August 1986 (Answer at ¶¶ 12, 17).

Defendant's arguments regarding redacted information are without merit in light of the United States' submission of unredacted copies of the evidence.  This evidence merely confirms that Zabdawi and Defendant shared the same birth date; it does nothing to support Defendant's contention that he was not Zabdawi.  Given that Zabdawi entered the United States on a non-immigrant student visa, any lack of evidence that Zabdawi used Defendant's Social Security number is hardly significant; indeed, there is no evidence, or reason to believe, that Defendant obtained his Social Security number prior to entering the United States in December 1983.  Defendant's assertion of discrepancies in heights and weights is meritless and unsupported.

Finally, Defendant maintains that the FBI identification report establishes that he is not Zabdawi because it does not list Zabdawi's 1981 arrest.  The mere fact that the FBI failed to detect that Defendant was Zabdawi does not create a genuine issue of material fact as to whether Defendant was Zabdawi; it merely reflects that Defendant was able to effectively conceal his true identity when

---

[8] Plaintiff has submitted photocopies of photographs from the documents at issue.  Although the quality of the photocopies is not very good, the photographs appear to depict the same individual and, indeed, the same photograph was apparently used for both documents.

he re-entered the United States as Nouhad Afif Koleilat.

Defendant's arrest and deportation in 1981 rendered him inadmissible to the United States through 1986.  Moreover, he fraudulently re-entered the United States as Nouhad Afif Koleilat.  For these two independent reasons, Defendant was not "lawfully admitted to the United States for permanent residence" when he applied for permanent resident status in 1985.  See, e.g., Hernandez v. Ashcroft, 72 F. App'x 764, 766 (10th Cir. 2003) (unpublished) (noting that INS concluded alien was not admissible to the United States for permanent residence because he had re-entered the United States within the five-year period following his deportation); Esposito v. I.N.S., 936 F.2d 911, 916 (7th Cir. 1991) (finding alien who used false immigration documents to enter United States did not qualify for admission as permanent resident).[9]  Defendant's failure to satisfy this statutory prerequisite renders his certification of citizenship revocable as illegally procured.[10]

Plaintiff has met its burden of showing that the evidence justifying revocation of citizenship is clear, unequivocal, and convincing; Defendant has failed to set forth evidence establishing any disputed issues of material fact precluding entry of summary judgment.[11]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     Plaintiff's Motion for Summary Judgment (Dkt. 10) be **GRANTED**.

---

[9] That exclusion from admission under 8 U.S.C. § 1182(a) precludes lawful admission for permanent resident status has been confirmed in other contexts.  See, e.g., Bugayong v. I.N.S., 442 F.3d 67, 69 (2d Cir. 2006) (per curiam) (noting alien was not admissible for permanent residence due to conviction of crime involving moral turpitude); Dashto v. I.N.S., 59 F.3d 697, 703 (7th Cir. 1995) (same).

[10] Because Defendant's citizenship was illegally procured, there is no need to assess whether it was procured by concealment of a material fact or by willful misrepresentation.

[11] Because Plaintiff's plenary evidence leaves no genuine issue of material fact as to whether Defendant was Zabdawi, there is no need for an evidentiary hearing.  See Blackledge v. Allison, 431 U.S. 63, 80-81 (1977); Smart v. Jones, 530 F.2d 64, 65 (5th Cir. 1976).

**Date:  July 30, 2010**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

10